***********
Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission modifies and affirms the Decision and Order of the Deputy Commissioner as follows:
Based upon the competent, credible evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff and Ronald Pennington were inmates housed at Odom Correctional Center in Jackson, N.C. in 1995. While housed together at Odom, Pennington stabbed plaintiff several times with a large nail. Plaintiff was injured on the top of his head and in the area surrounding the eye. Pennington was shipped to another facility. Subsequently, plaintiff was released from prison, but re-entered the system in September, 1996.
2. On May 15, 1997, the date of the incident giving rise to this claim, plaintiff was transferred to Marion Correctional Institute to participate in the DART program. He had no idea that Pennington was a close custody inmate at Marion.
3. Plaintiff arrived at Marion sometime between 6:00 and 6:30 p.m. At approximately 8:30 p.m. Ronald Pennington again stabbed plaintiff.
4. At the time of his arrival at Marion, plaintiff was taking prescribed medications. Upon hearing an announcement for medication call, he asked a correctional officer on his floor about medication call. Plaintiff was directed to procede unaccompanied to the medications window to pick up his medication.
5. Plaintiff proceeded to the window, but it was closed. He got in the canteen line thinking that this line was for both canteen and medication. He observed that there was no correctional officer in close proximity to the canteen or medication window. At the same time plaintiff was sent to obtain his medications, the F-unit was conducting canteen for the "Upper-F" unit (DART) inmates and a clothing exchange for "Lower-F" unit (close custody) inmates. The line for the clothing exchange was separated from the canteen area through an open slider door. There was a table of clothing partially blocking the open doorway.
6. While standing in the canteen line, plaintiff heard an inmate say, "You better look out". Before he could turn around, Pennington had stabbed plaintiff in the back of his neck. Plaintiff turned around to find out what was happening and noticed Pennington with an object resembling an ice-pick, still trying to stab him. Plaintiff tried to defend himself to avoid further stabbing. Officer Danny Freeman noticed the altercation from his position in the control booth and called a "Code 2". Before officers could arrive, plaintiff suffered at least four stab wounds, one to the back of his neck, two to the stomach and one under his chin.
7. When Correctional Officers Jennifer Mooney and Matthew Clark arrived on the scene in front of the control booth, Pennington had ceased his attack on plaintiff. Pennington handed over the shank and was handcuffed and escorted away. Plaintiff was handcuffed and escorted to Sgt. Harris' office. While plaintiff was in Sgt. Harris' office, Officer Clark entered and showed Sgt. Harris, but not plaintiff, the weapon which had been confiscated from Inmate Pennington. Sgt. Harris took plaintiff for medical treatment of his stab wounds. While plaintiff was being escorted in handcuffs for medical treatment, a second inmate, Russell Workman, jumped over the clothing table and through the slider doors and attempted to assault plaintiff. Inmate Workman was restrained and was not able to make physical contact with plaintiff.
8. Plaintiff was then transferred to the local hospital and from there he was transferred to Durham Regional Medical Center. He remained in Durham Regional Medical Center for three or four days. During his stay there, medical personnel conducted exploratory surgery of his stomach and bowel region to insure there was no bleeding internally. Upon his release from Durham Regional Medical Center, he was transferred to Central Prison Hospital where he remained two weeks.
9. At the hearing before the Deputy Commissioner, plaintiff testified that the bar slider door, which separated the inmates' sleeping quarters from the common area, was open. He testified that he did not see any officers in the area. At the time of medication call, close custody inmates were exchanging clothes and DART inmates were participating in canteen activities.
10. Captain Robert Benefield prepared an Incident Report dated May 20, 1997 detailing what occurred at the time of plaintiff's injury. He was of the opinion that scheduling medication call, canteen services and clothes exchange at the same time caused staff to be spread too thinly to effectively supervise inmate activities.
11. An additional problem for prison officials in supervising the area at the time of plaintiff's injuries was created by the fact that one of the correctional officers assigned to the F-unit had suddenly become ill and had to go to the hospital. Another officer was called in as a substitute. All three activities, medication call, canteen call and the clothing exchange, were in progress when Correctional Officer Jennifer Ann Mooney, the substitute officer, arrived for duty on the Lower F-unit. For at least a short period of time while Officer Mooney was preparing for her new duties, these three activities were in progress involving inmates with one correctional officer who was on the floor overseeing clothing exchange (Brian Clark), one correctional officer in the control room (Daniel Freeman) and one correctional officer in preparation for duty (Jennifer Mooney). Sgt. Donnie Harris was located in the unit but he was in his office. Defendant was therefore in compliance with standard staffing patterns which required two officers on each floor and one officer in the control center.
12. At the time of plaintiff's injury, inmate movement for canteen services and medication call was being monitored primarily by Correctional Officer Freeman in the control room. There were too many simultaneous activities happening on the F-unit to allow for adequate supervision considering the staffing level at the time. However, there is no evidence that defendant violated any policy or standard operating procedure in allowing three activities to procede at the same time.
13. Also, the sudden illness of the correctional officer assigned to the floor of Unit F contributed to the temporary lapse in supervision on the unit. Defendant's failure to cease all activities on the unit until the newly assigned officer was in place and at full duty alert did not constitute a negligent breach of duty. Defendant could not have prevented Pennington's assault upon plaintiff even if correctional Officer Mooney had been on full duty alert. The incident happened quickly and without prior warning.
14. Defendant's failure to cease all activities after the initial altercation between Pennington and plaintiff may have in hindsight been poor judgment, but such an omission did not constitute negligence. Inmate fights are common in prison units and the matter was under control within minutes.
15. Defendant has a duty to use ordinary care under the circumstances to protect the plaintiff from reasonably foreseeable harm.
16. Plaintiff has failed to prove by the greater weight of the evidence that defendant's failure to record in its central monitoring system information about a previous fight between Pennington and plaintiff constituted negligence. At the time of the prior fight, defendant did not have in place a statewide system which mandated that all units record proper transfer information to make the central monitoring system effective. Also, plaintiff never placed defendant on notice that he needed to be protected from contact with Pennington and defendant's records did not indicate any reason for separating the two. Subsequent to his first fight with Pennington, plaintiff was released from prison in September 1995 and re-entered the system in September 1996. The central monitoring system is set up to track inmates who have had problems with each other to prevent them from being housed together. Plaintiff and another inmate were put in the central monitoring file in June, 1995 to prevent further contact between the two, but not plaintiff and Pennington.
17. Defendant could not reasonably foresee at the time plaintiff was assigned to Marion, that plaintiff would be attacked by Pennington who also resided at the same unit. Defendant had no reasonable notice that plaintiff needed to be housed separately from Pennington. Therefore, defendant did not breach its duty to protect plaintiff from reasonably foreseeable harm.
18. Based on the greater weight of the evidence, plaintiff was not harmed by Inmate Workman. Inmate Workman was prevented by Sgt. Harris from touching plaintiff. The attempted assault on plaintiff by Inmate Workman was not reasonably foreseeable and was not caused by any negligence of defendant.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. It is established that the Department of Correction has "a duty of reasonable care to protect [a] plaintiff from reasonably foreseeable harm." Taylor v. North Carolina Dept. of Correction, 88 N.C. App. 446,363 S.E.2d 868 (1988).
2. Plaintiff has failed to prove by the greater weight of the evidence that his injuries resulting from an assault by Inmate Pennington were proximately caused by the defendant's breach of its duty to protect plaintiff from reasonably foreseeable harm. Plaintiff has also failed to show that the acts or omissions complained of constituted negligence on the part of defendant. N.C. Gen. Stat. § 143-291.
3. Plaintiff has also failed to prove negligence on the part of defendant resulting from Inmate Workman's attempted assault or that he was damaged in any way by this attempted assault. N.C. Gen. Stat. §143-291.
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for damages is DENIED.
2. Plaintiff shall pay the costs. As plaintiff is indigent, no costs are assessed.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER